**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
**-------------------------------------------------------X**

| | |
|---|---|
| In re: | Chapter 11 |
| **63 MILL RIVER ROAD LLC**, | Case No. 26-71066-JPM |
| *Debtor.* | Hon. John P. Mastando III |

--------------------------------------------------------------X

# DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

*Dated: August 3, 2026*

## INTRODUCTION

63 Mill River Road LLC, the debtor and debtor-in-possession, proposes this Chapter 11 Plan of Reorganization pursuant to 11 U.S.C. § 1121(a).

The Plan is simple in concept. The Debtor's only asset is a single-family home. Its only filed claim is that of Stormfield Capital Funding I, LLC, which the Debtor disputes in substantial part. The Debtor has arranged financing sufficient to pay in full whatever this Court determines Stormfield is lawfully owed, together with the Nassau County real property taxes, the Shoppers World mechanic's lien, and the costs of administration. **The Plan pays in cash on the Effective Date every sum no one disputes, and defers payment of the disputed balance until a court determines what, if anything, is owed.** Stormfield retains its liens in the meantime, continues to receive $12,500 a month as it has since May 2026, and is paid the present value of its claim when that claim is finally allowed. Confirmation therefore does not depend upon the outcome of the Debtor's claim objection or its adversary proceeding, and neither the estate nor the Gibbs family is required to fund a disputed claim before it is adjudicated.

Capitalized terms are defined in Article I. Creditors should read the accompanying Disclosure Statement in full before voting.

## ARTICLE I — DEFINITIONS AND CONSTRUCTION

1.1 **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under 11 U.S.C. §§ 503(b) and 507(a)(2), including professional compensation and fees payable under 28 U.S.C. § 1930.

1.2 **"Adversary Proceeding"** means the action the Debtor and William Jean Gibbs, Sr. have commenced or will commence against Stormfield Capital Funding I, LLC, Stormfield Capital, LLC, Wesley W. Carpenter, Joseph Raya, JB Lending LLC, 3B Lending LLC, Joseph Rosen, Tao Investment Group and others, asserting claims under the Racketeer Influenced and Corrupt Organizations Act, the Truth in Lending Act, the Home Ownership and Equity Protection Act, the Real Estate Settlement Procedures Act, N.Y. Banking Law § 6-l, N.Y. General Business Law § 349, New York's usury statutes, and the common law, together with any amendment or supplement thereto.

1.3 **"Allowed"** means, with respect to a Claim, that portion of the Claim (a) as to which no objection has been timely filed, or (b) as to which an objection has been filed and has been determined by Final Order.

1.4 **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York.

1.5 **"Causes of Action"** means all claims, actions, causes of action, choses in action, suits, debts, obligations, rights of setoff and recoupment, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and crossclaims of the Debtor, the Debtor in possession or the estate, whether pending on the Effective Date or thereafter instituted, against any person or entity, based in law or in equity, whether direct, indirect, derivative or otherwise, and whether asserted or unasserted, including without limitation the Claim Objection, the Adversary Proceeding, and every claim described in Article VII and in the Schedule of Retained Causes of Action.

1.6 **"Claim Objection"** means the Debtor's objection to Claim No. 1 under 11 U.S.C. § 502(b), Fed. R. Bankr. P. 3007, and Fed. R. Bankr. P. 3001.

1.7 **"Confirmation Date"** means the date on which the Confirmation Order is entered.

1.8 **"Disputed"** means, with respect to a Claim or any portion of a Claim, a Claim or portion that is not an Allowed Claim, including any Claim or portion that is the subject of an objection or of the Adversary Proceeding that has not been withdrawn or resolved by Final Order.

1.9 **"Disputed Claim Reserve"** means the segregated interest-bearing account that may be established under Section 4.10 or Section 4.12.

1.10 **"Effective Date"** means the first business day that is fourteen days after the Confirmation Date, provided the conditions in Article IX are satisfied or waived.

1.11 **"Exit Financing"** means the financing described in Article V.

1.12 **"Family Contribution"** means the cash contribution described in Article V.

1.13 **"Final Order"** means an order or judgment of the Bankruptcy Court, or of another court of competent jurisdiction with respect to the subject matter, that has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and no appeal, petition or motion has been timely taken, or as to which any appeal, petition or motion that has been taken has been finally resolved by the highest court to which it was presented or has been dismissed with prejudice. Where this Plan requires a Final Order determining the Claim Objection and the Adversary Proceeding, the term means the order or orders finally determining the Allowed amount of the Stormfield Claim after netting of every defense, setoff, recoupment and judgment adjudicated therein.

1.14 **"Nassau Tax Claim"** means the secured claim of the Nassau County Treasurer for unpaid real property taxes, in the approximate amount of **$67,573.00**, together with statutory interest.

1.15 **"Plan Interest Rate"** means the rate of interest determined by the Bankruptcy Court at the Confirmation Hearing as necessary to provide the holder of the Class 2 Claim with the present value, as of the Effective Date, of the deferred portion of its Allowed Claim under 11 U.S.C. § 1129(b)(2)(A)(i)(II). See *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004); *In re MPM Silicones, L.L.C.*, 874 F.3d 787 (2d Cir. 2017).

1.16 **"Property"** means the real property and improvements known as 63 Mill River Road, Upper Brookville, New York 11771, Section 24, Block B, Lot 893.

1.17 **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

1.18 **"Schedule of Retained Causes of Action"** means the schedule annexed to this Plan as Exhibit A.

1.19 **"Shoppers World Claim"** means the claim of Shoppers World Construction Corp. secured by the mechanic's lien filed against the Property, Nassau County Instrument No. 2023-00152933, in the amount of **$[amount]**.

1.20 **"Stormfield"** means Stormfield Capital Funding I, LLC.

1.21 **"Stormfield Claim"** means Claim No. 1, filed May 21, 2026, asserting $3,112,799.26, of which $1,999,000.00 is asserted as secured.

1.22 Terms not defined here have the meanings given in the Bankruptcy Code and the Bankruptcy Rules. The rules of construction in 11 U.S.C. § 102 apply. Captions are for convenience only.

## ARTICLE II — UNCLASSIFIED CLAIMS

2.1 **Administrative Claims.** Each holder of an Allowed Administrative Claim shall receive cash in the full allowed amount on the later of the Effective Date and the date the Claim becomes Allowed, unless the holder agrees to different treatment. Professionals shall file final fee applications within thirty days after the Effective Date.

2.2 **Statutory Fees.** All fees payable under 28 U.S.C. § 1930, including quarterly fees payable under 28 U.S.C. § 1930(a)(6) after the Effective Date, shall be paid in full on the Effective Date and thereafter as they come due until the earlier of the entry of a final decree closing the case or an order converting or dismissing the case, and the Reorganized Debtor shall file post-confirmation reports in conformity with the United States Trustee guidelines until entry of such an order. No administrative claim bar date applies to fees under 28 U.S.C. § 1930.

2.3 **Priority Tax Claims.** Each holder of an Allowed Claim under 11 U.S.C. § 507(a)(8) shall receive cash in the full allowed amount on the Effective Date, or such other treatment as § 1129(a)(9)(C) permits.

## ARTICLE III — CLASSIFICATION OF CLAIMS AND INTERESTS

3.1 Claims and Interests are classified as follows:

| Class | Description | Status | Voting |
|---|---|---|---|
| 1 | Nassau County secured real property tax claim | Impaired | Entitled to vote |
| 2 | Stormfield secured claim | Impaired | Entitled to vote |
| 3 | Shoppers World Construction Corp. mechanic's lien claim | Impaired | Entitled to vote |
| 4 | General unsecured claims | Impaired | Entitled to vote |
| 5 | Equity interests | Unimpaired | Deemed to accept |

3.2 A Claim is in a particular Class only to the extent it qualifies, and is in a different Class to the extent it qualifies in that other Class.

## ARTICLE IV — TREATMENT OF CLAIMS AND INTERESTS

### Class 1 — Nassau County Tax Claim

4.1 On the Effective Date, the holder of the Allowed Nassau Tax Claim shall receive **cash in the full allowed amount, together with interest at the statutory rate** through the Effective Date. Its lien shall be released upon payment. Class 1 is impaired solely because payment is deferred to the Effective Date, and is entitled to vote.

### Class 2 — Stormfield Secured Claim

4.2 **No sum is payable to Stormfield until the amount lawfully owing is determined.** The Stormfield Claim is disputed in substantial part. The Debtor has objected and will object to it, and asserts against it defenses of usury, recoupment and setoff, and affirmative claims exceeding it. **The Plan does not pay a disputed claim, and it does not require the estate or the Gibbs family to fund a disputed claim in advance of its determination.**

4.3 **Treatment.** Class 2 shall be treated as follows:

(a) **Payment of the undisputed portion on the Effective Date.** On the Effective Date Stormfield shall receive **cash equal to the undisputed portion** of its Claim — the unpaid principal actually advanced, together with interest at the non-default contract rate, less every payment received and not credited, and less every sum determined not to have been advanced. The Debtor presently computes that amount at approximately **$[__]**, subject to the accounting the Debtor has demanded.

(b) **Retention of lien as to the balance.** Stormfield shall **retain its existing liens upon the Property solely to secure the disputed portion** of its Claim, in the amount ultimately Allowed, and to no greater extent. Its liens upon the undisputed portion shall be released of record upon the Section 4.3(a) payment.

(c) **Deferred cash payment of the disputed portion.** Within **thirty days after a Final Order** determining the Claim Objection and the Adversary Proceeding, the Reorganized Debtor shall pay Stormfield **cash in the full amount, if any, by which its Claim is finally Allowed in excess of the Section 4.3(a) payment**, together with interest upon that amount at the **Plan Interest Rate** from the Effective Date, so that the deferred payments have a present value, as of the Effective Date, not less than the value of Stormfield's interest in the estate's interest in the Property. 11 U.S.C. § 1129(b)(2)(A)(i).

(d) **If the Claim is Allowed at nothing, nothing is paid**, and the liens shall be discharged of record.

4.4 **Interim protection.** Pending the Final Order, the Reorganized Debtor shall:

(a) continue to pay Stormfield **$12,500.00 per month (or a reduced amount as and when acceptable to the Court)**, on the first day of each month, which payments shall be **credited against any sum ultimately payable** under Section 4.3(c);

(b) maintain insurance upon the Property naming Stormfield as mortgagee and pay all real property taxes as they come due;

(c) **not sell, transfer, further encumber or waste the Property** without further order of this Court; and

(d) hold the Family Contribution, or so much of it as is not applied on the Effective Date, in a **segregated account** available to fund the Section 4.3(c) payment.

4.5 **Why this is fair and equitable.** Stormfield retains every lien it holds until it is paid whatever it is lawfully owed. It receives cash on the Effective Date for the part of its Claim no one disputes. It receives $12,500 a month in the meantime, as it has since May 2026. Its collateral is insured, taxed, occupied and maintained. And it receives the present value of its Allowed Claim when that amount is finally determined. It is entitled to no more. A creditor may not compel a debtor to pay, or to escrow, sums a court has not found to be owed.

4.6 **Recoupment.** The Debtor's claims under the Truth in Lending Act and the Home Ownership and Equity Protection Act are asserted **by way of recoupment and setoff against the indebtedness**, without regard to any limitations period, pursuant to 15 U.S.C. §§ 1640(e) and (k). Recoupment reduces the sum owing rather than creating a separate obligation, and the amount payable under Section 4.3(c) is net of it.

4.7 **Estimation.** The Debtor and the Reorganized Debtor may at any time request that the Bankruptcy Court estimate the Stormfield Claim or any other contingent, unliquidated or Disputed Claim pursuant to 11 U.S.C. § 502(c), whether or not an objection has previously been filed or ruled upon, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time, including during the pendency of any appeal. An estimated amount shall constitute either the Allowed amount of the Claim or a maximum limitation upon it, as the Bankruptcy Court determines. These procedures are cumulative and not exclusive.

4.8 **Default and cure.** If the Reorganized Debtor fails to make any payment required by this Article, Stormfield shall give written notice of the default to the Reorganized Debtor and its counsel, and the Reorganized Debtor shall have **thirty days** after receipt of such notice to cure. No remedy may be exercised, and no default shall be deemed to have occurred under this Plan, unless the default remains uncured after notice and the expiration of the cure period.

4.9 **Preservation of claims and defenses.** Nothing in this Plan allows the Stormfield Claim, waives the Claim Objection or the Adversary Proceeding, or admits anything. All claims, defenses, setoffs and rights of recoupment are expressly preserved. The Debtor's affirmative recovery, if any, in the Adversary Proceeding is property of the Reorganized Debtor.

4.10 **Alternative treatment — escrow at Stormfield's election.** If Stormfield objects to the deferral, the Debtor may elect, or the Court may direct, that in lieu of Sections 4.3(b) and (c) the Reorganized Debtor **fund a segregated interest-bearing Disputed Claim Reserve** on the Effective Date in the amount of the disputed portion, whereupon Stormfield's liens shall be **released in full** and the Reserve shall stand in place of the collateral, to be distributed upon the Final Order to the extent the Claim is Allowed, with the balance reverting to the Reorganized Debtor.

4.11 Class 2 is impaired and is entitled to vote.

**Class 3 — Shoppers World Mechanic's Lien Claim**

4.12 On the Effective Date, the holder of the Allowed Shoppers World Claim shall receive **cash in the full allowed amount**, or, at the Reorganized Debtor's election, the Claim shall be **escrowed in the Disputed Claim Reserve** pending determination of the Debtor's objection and of the Debtor's claims against Shoppers World Construction Corp. arising from its performance of the construction work. All such claims and defenses are preserved. Class 3 is impaired and is entitled to vote.

**Class 4 — General Unsecured Claims**

4.13 On the Effective Date, each holder of an Allowed Class 4 Claim shall receive **cash in the full allowed amount, without interest**. To the extent any deficiency claim of Stormfield is Allowed, it shall be treated in Class 4 and shall be paid from the Disputed Claim Reserve to the extent Allowed. Class 4 is impaired and is entitled to vote.

**Class 5 — Equity Interests**

4.14 William Jean Gibbs, Sr. shall **retain his membership interest** in the Reorganized Debtor. Because every Class of Claims is paid in full in cash or fully reserved, the absolute priority rule of 11 U.S.C. § 1129(b)(2)(B)(ii) is satisfied. Class 5 is unimpaired and is deemed to accept.

## ARTICLE V — MEANS FOR IMPLEMENTATION

5.1 **Sources of funding.** The Plan is funded from two sources, in combination:

(a) **Exit Financing** — a loan of approximately **$[2,200,000]** to be advanced to the Reorganized Debtor on or before the Effective Date by **[lender]**, secured by a first mortgage upon the Property, on the terms described in the Disclosure Statement and evidenced by the commitment annexed to the Disclosure Statement as Exhibit **[__]**; and

(b) **the Family Contribution** — cash of approximately **$[600,000]** to be contributed on or before the Effective Date by **Dr. William J. Gibbs, Jr.** and other members of the Gibbs family from personal and professional resources.

5.2 **The Family Contribution is new value.** It is new, substantial, in money, necessary to the reorganization, and reasonably equivalent to the interest retained. It is not a return on account of any prior interest. Because every Class is paid in full or fully reserved, no Class is impaired in a manner that engages the absolute priority rule; the Contribution is nevertheless pleaded as new value in the alternative.

5.3 **Disputed Claim Reserve.** On the Effective Date the Reorganized Debtor shall establish a segregated interest-bearing account at a federally insured depository, to be maintained by the Reorganized Debtor as escrow agent or by such other escrow agent as the Court may direct, and shall fund it as required by Section 4.10 or Section 4.12, if applicable. Funds in the Reserve shall not be used for any other purpose and shall be disbursed only upon Final Order.

5.4 **Vesting.** On the Effective Date all property of the estate, including all Causes of Action, shall vest in the Reorganized Debtor free and clear of all liens, claims, encumbrances and interests, **except that** (a) Stormfield shall retain its liens solely as and to the extent provided in Section 4.3(b), (b) the lien securing the Nassau Tax Claim shall remain until the payment provided in Section 4.1 is made, and (c) the mechanic's lien securing the Shoppers World Claim shall remain until the treatment provided in Section 4.12 is completed.

5.5 **Management.** William Jean Gibbs, Sr. shall continue as sole member and manager. No compensation shall be paid to him or to any insider on account of the Plan.

5.6 **Preservation of causes of action.** Pursuant to 11 U.S.C. § 1123(b)(3)(B), the Reorganized Debtor **retains and may exclusively institute, prosecute, abandon, settle or compromise all Causes of Action**, including without limitation the Claim Objection, the Adversary Proceeding, all claims described in Article VII, and all Causes of Action enumerated in the Schedule of Retained Causes of Action, whether or not commenced before the Confirmation Date. **No person or entity may rely on the absence of a specific reference in this Plan or the Disclosure Statement to any Cause of Action against it as an indication that the Debtor or the Reorganized Debtor will not pursue it.** Unless a Cause of Action is expressly waived, relinquished, released, compromised or settled in this Plan or by Final Order, it is expressly reserved for later adjudication, and no doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to it by reason of the Disclosure Statement, this Plan, the Confirmation Order, or the occurrence of the Effective Date. No claim is waived, released or compromised by this Plan or by the Confirmation Order.

5.7 **Corporate action.** All actions necessary to implement the Plan are authorized without further action by the member or manager.

5.8 **Governing documents.** To the extent 11 U.S.C. § 1123(a)(6) applies to the Debtor, the operating agreement and articles of organization of the Reorganized Debtor shall be deemed amended to prohibit the issuance of nonvoting equity securities.

## ARTICLE VI — PROVISIONS GOVERNING DISTRIBUTIONS

6.1 Distributions shall be made by the Reorganized Debtor by check or wire to the address or account shown on the applicable proof of claim.

6.2 No distribution shall be made on account of a Disputed Claim until it becomes Allowed.

6.3 Distributions of less than $25.00 need not be made. Checks uncashed within ninety days shall be void and the funds shall revert to the Reorganized Debtor.

6.4 The Reorganized Debtor may set off against any distribution any claim it holds against the recipient, without waiver of any such claim.

## ARTICLE VII — DISPUTED CLAIMS AND RETAINED CAUSES OF ACTION

7.1 **Objections.** The Reorganized Debtor may object to any Claim on or before the later of ninety days after the Effective Date and such date as the Court may fix.

7.2 **The Claim Objection.** The Debtor objects and will object to Claim No. 1 on the grounds, among others, that: the obligations are void or unenforceable under N.Y. Gen. Oblig. Law §§ 5-501 and 5-511 and N.Y. Penal Law § 190.40; the charges are disguised interest; the Claim is subject to recoupment under 15 U.S.C. §§ 1640(e) and (k) and N.Y. Banking Law § 6-l; the Claim credits no payment received after September 20, 2024; the Claim was filed without the documentation required by Fed. R. Bankr. P. 3001(c) and is not entitled to prima facie validity under Rule 3001(f); and **the Claim's own components do not produce its own stated subtotal, overstating the debt by $5,345.00 on its face before compounding.**

7.3 **Retained claims.** The Reorganized Debtor retains all claims against Stormfield Capital Funding I, LLC, Stormfield Capital, LLC, Wesley W. Carpenter, Joseph Raya, JB Lending LLC, 3B Lending LLC, Joseph Rosen, Tao Investment Group, Shoppers World Construction Corp., and any other person, including claims under 11 U.S.C. §§ 502, 510(c), 542, 544, 547, 548, 549 and 550.

7.4 **Equitable subordination.** The Reorganized Debtor retains the right to seek subordination of the Stormfield Claim under 11 U.S.C. § 510(c)(1) and transfer of the securing liens to the estate under § 510(c)(2).

## ARTICLE VIII — EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 All executory contracts and unexpired leases not previously assumed or rejected are **rejected** as of the Effective Date, except any listed on a schedule filed before the confirmation hearing as assumed.

8.2 Claims arising from rejection must be filed within thirty days after the Effective Date or be forever barred.

## ARTICLE IX — CONDITIONS PRECEDENT

9.1 **Conditions to confirmation.** The Confirmation Order shall be in form and substance acceptable to the Debtor.

9.2 **Conditions to the Effective Date.** (a) the Confirmation Order shall have become a Final Order or the Debtor shall have waived this condition; (b) the Exit Financing shall have closed and funded; (c) the Family Contribution shall have been received; and (d) the Disputed Claim Reserve, if required under Section 4.10, shall have been funded.

9.3 **Waiver.** The Debtor may waive any condition in Section 9.2 other than (b), (c) and (d).

9.4 **Failure of conditions.** If the Effective Date does not occur within sixty days after the Confirmation Date, the Debtor may seek such relief as is appropriate, and the Confirmation Order shall be of no force pending further order.

## ARTICLE X — EFFECT OF CONFIRMATION

10.1 **Binding effect.** The Plan binds the Debtor, all holders of Claims and Interests, and their successors, whether or not they voted and whether or not they accepted.

10.2 **Discharge.** Confirmation discharges the Debtor to the extent provided by 11 U.S.C. § 1141(d), except as § 1141(d)(3) may provide. Because every Claim is paid in full or fully reserved, no creditor is prejudiced.

10.3 **No third-party releases. This Plan grants no release, injunction or exculpation in favor of any non-debtor.** No guarantor, co-obligor or other non-debtor is released, and no claim of any creditor against any non-debtor is enjoined or impaired. 11 U.S.C. § 524(e); *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

10.4 **Satisfaction, not release.** Payment of Stormfield's Allowed Claim in full discharges the underlying indebtedness by its own terms, which in turn extinguishes the guaranties and the cross-collateral lien upon 131-04 220th Street, Laurelton, New York. That result follows from satisfaction of the debt and not from any release granted by this Plan.

10.5 **Exculpation.** The Debtor and its professionals shall have no liability for any act or omission in connection with the case or the Plan except for willful misconduct or gross negligence. **This provision extends to no other person.**

10.6 **Injunction.** Except as necessary to enforce the Plan or to prosecute the retained Causes of Action, all persons are enjoined from commencing or continuing any action against the Debtor or the Reorganized Debtor on account of a Claim treated by this Plan. **This injunction does not extend to any non-debtor.** Nothing in this Section prohibits the holder of a timely filed proof of claim from litigating its right to have its Claim declared an Allowed Claim and paid in accordance with this Plan, from defending the Claim Objection or the Adversary Proceeding, or from enforcing the obligations of the Reorganized Debtor under this Plan.

10.7 **Automatic stay.** The stay of 11 U.S.C. § 362(a) remains in effect until the Effective Date and not thereafter; from the Effective Date the injunctions of this Article, and not the stay, govern.

## ARTICLE XI — RETENTION OF JURISDICTION

11.1 The Bankruptcy Court retains jurisdiction to: determine all Claims and objections; determine the Claim Objection and any adversary proceeding, including the Adversary Proceeding to the extent it is within the Court's jurisdiction; determine fee applications; enforce, interpret and implement the Plan; determine disputes concerning the Disputed Claim Reserve; enter a final decree; and hear any matter arising in or related to the case.

## ARTICLE XII — MISCELLANEOUS

12.1 **Modification.** The Debtor may modify the Plan under 11 U.S.C. § 1127.

12.2 **Withdrawal.** The Debtor may withdraw the Plan at any time before the Confirmation Date.

12.3 **Governing law.** New York law governs except where the Bankruptcy Code or other federal law applies.

12.4 **Severability.** If any provision is held invalid, the remainder stands.

12.5 **Notices.** Notices shall be given to counsel at the address on the cover.

12.6 **Post-confirmation reporting.** The Reorganized Debtor shall file post-confirmation reports until the case is closed.

12.7 **Exemption under 11 U.S.C. § 1146(a).** The Exit Financing is made, delivered and recorded pursuant to, in implementation of, and under this Plan, after the Confirmation Date. To the fullest extent permitted by 11 U.S.C. § 1146(a), the making, delivery, filing or recording of any instrument of transfer under, in furtherance of, or in connection with this Plan — including the creation, modification, consolidation or recording of the mortgage securing the Exit Financing, and any deed, assignment, security agreement, financing statement or satisfaction, release or discharge of mortgage — shall not be subject to any stamp tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct every recording officer to accept such instruments for filing and recording without payment of any such tax or assessment.

12.8 **Good faith solicitation.** Upon entry of the Confirmation Order, the Debtor and its professionals shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the Bankruptcy Code, and are entitled to the protections of 11 U.S.C. § 1125(e).

12.9 **Final decree.** Upon substantial consummation, the Reorganized Debtor may apply for a final decree closing the case pursuant to Fed. R. Bankr. P. 3022. The determination of the Claim Objection and the Adversary Proceeding shall not be a condition to entry of a final decree, and the Bankruptcy Court shall retain jurisdiction over them notwithstanding the closing of the case.

## ARTICLE XIII — ALTERNATIVE TREATMENTS PLEADED IN THE ALTERNATIVE

The following are pleaded in the alternative, to be given effect only if the Court determines that the treatment in Article IV cannot be confirmed.

### A. Alternative One — Cramdown with separate classification of the guaranteed deficiency

13.1 If Stormfield's Claim is Allowed in an amount exceeding the funding available, and the Claim is bifurcated under 11 U.S.C. § 506(a), then:

(a) the Allowed secured claim shall be paid in deferred cash payments totalling the Allowed amount, of a present value not less than the value of the collateral, over **[__]** years at **[__]%**, secured by a retained lien, in satisfaction of § 1129(b)(2)(A)(i);

(b) **Stormfield's deficiency claim shall be separately classified** from other unsecured claims, on the ground that it is guaranteed by six personal guaranties of solvent non-debtors and by a lien upon a non-debtor's residence, and is therefore not substantially similar to the unguaranteed claims of Nassau County and Shoppers World. That difference is legitimate and is supported by credible proof; it is not a device to manufacture an accepting class; and

(c) the impaired accepting class required by § 1129(a)(10) shall be the Class 1 secured tax claim or the Class 3 mechanic's lien claim, each of which is unguaranteed and economically distinct.

13.2 The Debtor discloses that separate classification of a guaranteed deficiency is the minority rule, that the Second Circuit requires a legitimate reason supported by credible proof, and that this alternative may not be confirmable.

### B. Alternative Two — Subchapter V

13.3 If the Debtor is determined to be eligible, the Debtor may seek leave to amend its petition under Fed. R. Bankr. P. 1020 and 11 U.S.C. § 1189 and to confirm under § 1191(b), which dispenses with §§ 1129(a)(8) and (a)(10) and replaces the absolute priority rule with a projected-disposable-income test.

13.4 **The Debtor discloses candidly that this alternative is likely unavailable.** The temporary $7,500,000 eligibility ceiling enacted by the CARES Act and extended by the Bankruptcy Threshold Adjustment and Technical Corrections Act expired on June 21, 2024, and eligibility has since turned on the "small business debtor" definition of 11 U.S.C. § 101(51D) and its lower,

periodically adjusted aggregate debt limit. The aggregate of noncontingent liquidated debt — Claim No. 1 alone being $3,112,799.26, together with the Nassau Tax Claim and the Shoppers World Claim — appears to exceed that limit, and the time to elect has passed. This alternative is preserved only in the event the Claim Objection reduces the noncontingent liquidated debt below the limit and the Court permits a late designation under Fed. R. Bankr. P. 1020.

## ARTICLE XIV — REQUEST FOR CONFIRMATION

14.1 The Debtor requests confirmation under 11 U.S.C. § 1129(a). **In the event that any impaired Class entitled to vote fails to accept the Plan in accordance with 11 U.S.C. § 1129(a)(8), the Debtor requests, and expressly reserves the right to seek, confirmation of the Plan in accordance with 11 U.S.C. § 1129(b)**, and reserves the right to modify the Plan to the extent, if any, that confirmation under § 1129(b) requires modification, including by modifying the treatment of any Class to render it unimpaired.

## EXHIBIT A — SCHEDULE OF RETAINED CAUSES OF ACTION

Without limiting the generality of Sections 5.6 and 7.3, the Reorganized Debtor expressly retains, and shall have the exclusive right to prosecute, the following, against the following persons and all others:

1. The Claim Objection — the objection to Claim No. 1 of Stormfield Capital Funding I, LLC under 11 U.S.C. §§ 502(b) and 506, Fed. R. Bankr. P. 3001 and 3007, including on the grounds of usury, failure of documentation, arithmetic overstatement, and uncredited payments.
2. The Adversary Proceeding — all claims of the Debtor against Stormfield Capital Funding I, LLC; Stormfield Capital, LLC; Wesley W. Carpenter; Joseph Raya; JB Lending LLC; 3B Lending LLC; Joseph Rosen; and Tao Investment Group, including claims under 18 U.S.C. § 1962(a), (b), (c) and (d); 15 U.S.C. § 1601 et seq. (TILA and HOEPA), including recoupment under 15 U.S.C. §§ 1640(e) and (k); 12 U.S.C. § 2601 et seq. (RESPA); N.Y. Banking Law §§ 6-l, 590 and 598; N.Y. Gen. Oblig. Law §§ 5-501, 5-511 and 5-521; N.Y. Penal Law § 190.40; N.Y. Gen. Bus. Law § 349; and the common law of fraud, fraud in the factum, fraudulent concealment, breach of fiduciary duty, negligence, economic duress, unconscionability, slander of title, unjust enrichment, and accounting.
3. All claims against Shoppers World Construction Corp. arising from its performance of construction work at the Property, and all objections and defenses to its mechanic's lien and any claim filed upon it.

4. Equitable subordination of the Stormfield Claim under 11 U.S.C. § 510(c)(1) and transfer of the securing liens to the estate under § 510(c)(2).

5. All avoidance and recovery actions under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549, 550, 551 and 553, and all rights of setoff and recoupment under § 553 and applicable non-bankruptcy law.

6. All counterclaims, crossclaims and defenses in any action commenced against the Debtor or the Reorganized Debtor by any person.

Dated: New York, New York
August 3, 2026

**63 MILL RIVER ROAD LLC**
By: s/*williamjeangibbs*
William Jean Gibbs, Sr.
Sole Member and Manager

**DAHIYA LAW OFFICES LLC**
By: s/*karamvirdahiya*
Karamvir Dahiya, Esq.
111 John Street, Suite 1860
New York, New York 10038
(212) 766-8000
*Counsel for the Debtor and Debtor-in-Possession*