**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **-----------------------------------------------------------X** | **Case No. 8-26-71066-JPM** |
| **In re:** | |
| **63 MILL RIVER ROAD LLC,** | **Hon. John P. Mastando III** |
| ***Debtor.*** | **Chapter 11** |
| **-----------------------------------------------------------X** | |

# DISCLOSURE STATEMENT FOR DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

*Dated: August 3, 2026*


**DAHIYA LAW OFFICES LLC**
Karamvir Dahiya, Esq.
111 John Street, Suite 1860
New York, New York 10038
Tel: (212) 766-8000
karam@dahiya.law
*Counsel for the Debtor and Debtor-in-Possession*

## IMPORTANT NOTICES

**THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION WITHIN THE MEANING OF 11 U.S.C. § 1125. NO SOLICITATION OF VOTES MAY BE MADE UNTIL IT IS APPROVED.**

This Disclosure Statement is submitted pursuant to 11 U.S.C. § 1125 to provide information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor typical of the holders of claims against the Debtor to make an informed judgment about the Plan. It is not a substitute for reading the Plan itself, which controls in the event of any inconsistency.

**NO REPRESENTATIONS ABOUT THE DEBTOR, ITS PROPERTY, OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION OR INDUCEMENT MADE TO SECURE AN ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED HERE SHOULD NOT BE RELIED UPON, AND SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR OR TO THE UNITED STATES TRUSTEE.**

**THE INFORMATION IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. EVERY REASONABLE EFFORT HAS BEEN MADE TO PRESENT COMPLETE AND ACCURATE INFORMATION, BUT THE DEBTOR IS UNABLE TO WARRANT THAT IT IS FREE OF INACCURACY. COUNSEL FOR THE DEBTOR HAS NOT INDEPENDENTLY VERIFIED THE INFORMATION PROVIDED BY THE DEBTOR AND MAKES NO REPRESENTATION OR WARRANTY AS TO IT. STATEMENTS DRAWN FROM DOCUMENTS FILED BY STORMFIELD OR ENTERED BY OTHER COURTS ARE CITED TO THEIR SOURCES.**

**ALL CREDITORS ENTITLED TO VOTE ARE URGED TO READ THE PLAN AND THIS DISCLOSURE STATEMENT IN FULL, AND MAY WISH TO CONSULT COUNSEL BEFORE VOTING. THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND INTEREST HOLDERS TO ENABLE THEM TO MAKE AN INFORMED DECISION ABOUT THE PLAN.**

**EACH CREDITOR IS URGED TO CONSULT ITS OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN TO IT. THE DEBTOR MAKES NO REPRESENTATION REGARDING THE TAX IMPACT OF THE PLAN ON ANY CREDITOR.**

Certain statements are forward-looking and depend on events that have not occurred. **The Debtor's principal asset is the subject of contested litigation, and the amount that will ultimately be owed to the Debtor's principal creditor has not been determined.** Creditors should read Section XIII (Risk Factors) with particular care.

No securities are issued or offered under the Plan, and no valuation of securities is therefore required. 11 U.S.C. § 1125(b).

Nothing in this Disclosure Statement constitutes an admission, and nothing is or shall be admissible against the Debtor or any other person in any proceeding except a proceeding to confirm or enforce the Plan.

## I. INTRODUCTION AND SUMMARY

**1.1 What this case is about.** In November 2021 the Gibbs family agreed to buy a single-family house at 63 Mill River Road, Upper Brookville, New York, for $1,630,000, intending it as the home of William Jean Gibbs, Sr., now 86, and his two sons. They put $200,000 of their savings into it. They financed the balance. What followed is set out in Sections IV and V.

**1.2 What the Plan does.** The Plan pays in cash, on the Effective Date, every sum that no one disputes — the Nassau County real property taxes, the costs of administration, and the undisputed portion of the mortgage debt. It defers payment of the **disputed** portion of the mortgage debt until a court determines what, if anything, is lawfully owed. Stormfield keeps its liens until it is paid, and continues to receive $12,500 a month in the meantime.

**1.3 Where the money comes from.** The Plan is funded by a combination of new mortgage financing of approximately **$[2,200,000]** and a cash contribution of approximately **$[600,000]** from Dr. William J. Gibbs, Jr. and other members of the Gibbs family.

**1.4 What creditors get.**

| Class | Claim | Treatment | Estimated recovery |
|---|---|---|---|
| 1 | Nassau County taxes | Cash in full on the Effective Date | 100% |
| 2 | Stormfield secured claim | Undisputed portion in cash on the Effective | 100% of the Allowed Claim |

| | | | |
|---|---|---|---|
| | | Date; disputed portion paid within 30 days of a Final Order | |
| 3 | Shoppers World mechanic's lien | Cash in full, or escrowed pending objection | 100% of the Allowed Claim |
| 4 | General unsecured claims | Cash in full, without interest | 100% of Allowed Claims |
| 5 | Equity | Retained | n/a |

**1.5 The Debtor recommends that you vote to accept the Plan.**

## II. VOTING AND CONFIRMATION PROCEDURES

**2.1 Who votes.** Classes 1, 2, 3 and 4 are impaired and entitled to vote. Class 5 is unimpaired and is deemed to accept.

**2.2 How to vote.** Complete the ballot enclosed and return it so that it is **actually received** by counsel for the Debtor at the address on the cover by **[date]**. Ballots received after that time will not be counted absent order of the Court.

**2.3 Acceptance.** A class of claims accepts if holders of at least two-thirds in amount and more than one-half in number of the Allowed Claims in that class who actually vote, vote to accept. 11 U.S.C. § 1126(c). Only holders of Allowed Claims vote. **Because the Debtor has objected to Claim No. 1, the amount in which Stormfield may vote is subject to temporary allowance by the Court under Fed. R. Bankr. P. 3018(a)**, and a creditor whose claim is allowed in part as secured and in part as unsecured votes in both capacities, Fed. R. Bankr. P. 3018(d). **A ballot does not constitute a proof of claim.**

**2.4 The confirmation hearing** will be held on **[date]** at **[time]** before the Honorable John P. Mastando III, United States Bankruptcy Court, Long Island Federal Courthouse, 290 Federal Plaza, Central Islip, New York. Objections to confirmation must be filed and served by **[date]**.

**2.5 Best interests.** Whether or not a class accepts, each holder of an impaired claim must receive at least what it would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7). Section XII contains the liquidation analysis.

**2.6 Cramdown.** If any impaired class does not accept, **the Debtor will request confirmation under 11 U.S.C. § 1129(b)** — the "cramdown" power — which permits confirmation over a rejecting class if the Plan does not discriminate unfairly and is fair and equitable. As to a

rejecting secured class, § 1129(b)(2)(A) is satisfied if the holder (i) retains its liens to the extent of its allowed secured claim and receives deferred cash payments totalling the allowed amount, of a present value not less than the value of its interest in the collateral; or (ii) its collateral is sold with its lien attaching to the proceeds; or (iii) it realizes the indubitable equivalent of its claim. **The Plan is built on the first of these routes**, and the interest rate on the deferred payment will be fixed by the Court at confirmation under *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), and *In re MPM Silicones, L.L.C.*, 874 F.3d 787 (2d Cir. 2017).

## III. THE DEBTOR AND ITS PROPERTY

**3.1 The Debtor.** 63 Mill River Road LLC is a New York limited liability company formed **January 25, 2022**. Its sole member and manager is William Jean Gibbs, Sr. Its EIN is 88-1106584. It has no employees, no operations and no revenue. It has never conducted any business other than holding the Property.

**3.2 Why the company exists.** The Debtor did not exist when the family agreed to buy the house. The contract of sale, dated November 2021, names **"WILLIAM GIBBS, M.D."** as purchaser, with the words "or entity to be formed" written in by hand. The company was created afterward, at the insistence of the lender, which required as a condition of credit that title be held by "a single-purpose real estate entity acceptable to the lender." That requirement, and its consequences, are the subject of the litigation described in Section IX.

**3.3 The Property.** 63 Mill River Road, Upper Brookville, New York 11771 (Section 24, Block B, Lot 893), a single-family residence on approximately 2.40 acres, under renovation. Dr. William J. Gibbs, Jr. resides at and safeguards the Property.

**3.4 Value.** The record contains three valuations:

| **Source** | **Date** | **Basis** | **Value** |
|---|---|---|---|
| Appraisal in the lender's file | Aug. 17, 2023 | As completed per plans and specifications | **$3,200,000** |
| Appraisal in the lender's file | Feb. 6, 2024 | "As is," against a construction budget of $1,097,300 | **$1,900,000** |
| Stormfield broker price opinion | **Mar. 19, 2026 — the day after the petition** | "As is" | **$1,999,000** |
| Debtor's schedules | Apr. 1, 2026 | | $2,000,000 |

The August 2023 appraisal states on its face: **"Actual Use as of Effective Date: 1 FAMILY RESIDENTIAL."**

**3.5 Summary of assets and liabilities.** The Debtor's assets are the Property (scheduled at $2,000,000; see Section 3.4), the estate's Causes of Action described in Section IX (unliquidated), and nominal cash. Its liabilities are the Stormfield Claim ($3,112,799.26 as filed, disputed), the Nassau Tax Claim (approximately $67,573), the Shoppers World mechanic's lien ($[amount], disputed), and administrative expenses of this case. No other claim has been filed or scheduled as undisputed.

**3.6 The Debtor is not a "single asset real estate" debtor.** Section 101(51B) of the Bankruptcy Code defines single asset real estate as "real property constituting a single property or project, **other than residential real property with fewer than 4 residential units**, which generates substantially all of the gross income of a debtor." The Property is a single-family residence — residential real property with fewer than four residential units — and generates no income at all. The accelerated timetable of 11 U.S.C. § 362(d)(3) therefore does not apply to this case by the statute's own terms.

**3.7 The Queens property.** 131-04 220th Street, Laurelton, New York 11413, is the residence of William Jean Gibbs, Sr. **It is not property of this estate.** It is owned by 131-04 220th Street Corp. and was pledged as additional collateral for the Debtor's loan. Its treatment is discussed in Sections IX and XIII.

## IV. THE LOAN — COMPLETE HISTORY

**4.1 The purchase.** November 2021: contract of sale on the New York State Bar Association's standard-form **Residential** Contract of Sale, sellers Richard F. McCormick and Ilia I. Jagenburg, purchase price $1,630,000, purchaser "William Gibbs, M.D. or entity to be formed." Down payment funded with $200,000 of family savings.

**4.2 The first loan — March 11, 2022.** A note of **$1,467,000** naming **"3B LENDING LLC"** as lender and "63 MILL RIVER ROAD LLC AND DR. WILIAM J. GIBBS, JR." as borrower. The note is internally inconsistent: it recites an interest rate of **11.00%** in its header and **10.00%** in its text; a payment commencement date of **August 1, 2022** in its header and **May 1, 2022** in its text; and an "interest only monthly payment of **$1,833.33**" when interest only at its own stated rate on its own stated principal is **$12,225.00** per month. The family paid $12,225.00. The note waives

homestead and exemption protections, escalates to 16% on default, and recites that additional collateral is to be recorded against Gibbs Sr.'s Laurelton home.

**4.3 Stormfield's Letter of Intent — October 17, 2022.** Signed by Wesley W. Carpenter. It required, as a condition of credit, that the borrower be **"a single-purpose real estate entity acceptable to the lender,"** and recited that the proceeds were for **"commercial purposes only"** and **"shall not be used for personal or consumer purposes."** It required as guarantors **"all members of the Borrowing Entity, individually."** It fixed a 1% origination fee, a 1% exit fee, a **2% brokerage fee to Tao Investment Group**, a three-month interest reserve net funded from proceeds, $100/month servicing net funded, and a **3% "Break-Up Fee"** with the borrower's advance consent to the recording of a lis pendens.

**4.4 The assignment.** Allonge dated **November 3, 2022**, reciting that the note was made to the order of **"JB LENDING LLC"** and signed by JB Lending LLC by Joseph Rosen. Assignment of Mortgage recorded **November 22, 2022** (Instr. No. 2022-112180), naming **"3B LENDING LLC"** as assignor in its operative paragraph but signed **"JB LENDING LLC."**

**4.5 The closing — November 15, 2022.** On a single day the family executed a Gap Promissory Note of **$191,750** (borrowers: the Debtor **and 131-04 220th Street Corp.**), a Gap Mortgage, a Consolidated and Restated Promissory Note of **$1,658,750**, a Consolidated Mortgage and CEMA, a Building Loan Promissory Note of **$600,000**, a Building Loan Mortgage, and guaranties. The state court record reflects **six** guaranties — first, second and third from each of William and Steven Gibbs.

**4.6 Total original principal: $2,258,750** — against a house bought eleven months earlier for $1,630,000.

**4.7 The economics.**

| | |
|---|---|
| **Origination fee (1%)** | **$23,000.00** |
| Brokerage fee to Tao Investment Group (2%) | 46,000.00 |
| Interest reserve, three months, net funded | 44,537.44 |
| Prepaid non-refundable servicing | 1,200.00 |
| **Retained at closing** | **$114,737.44** |
| Consolidated Note exit fee | 16,587.50 |
| Building Note exit fee | 6,000.00 |
| Default rate | **24%** |

The Gap Note's exit fee of $16,587.50 is **8.65% of that note's principal**, after a letter of intent promising 1%.

**4.8 The construction loan.** Stormfield approved the budget, inspected before each draw, controlled each release, and **disbursed the proceeds directly to Shoppers World Construction Corp. rather than to the Debtor.** The Debtor never controlled a dollar of the construction money.

**4.9 What happened.** The contractor destroyed the plumbing. The house became uninhabitable. An uninhabitable house could not be refinanced, and the conventional refinance was the only source from which a twelve-month balloon loan was ever to be repaid.

**4.10 Default and acceleration.** Notice of Default dated **August 15, 2023**; Notice of Acceleration dated **October 16, 2023** — each sent by Federal Express, each revoking the Debtor's license to collect "Rents" from a house that has never had a tenant.

**4.11 The Forbearance Agreement — October 2024.** Required a **$50,000** entry payment, of which **$38,185.80 was retained as a non-refundable fee** "earned based on Lender's willingness to enter into this Agreement," and only $11,814.20 applied to the loan. Required $15,000 monthly. Offered to release the Queens Property from the CEMA for a **$650,000** partial payoff by **December 13, 2024**. Made any bankruptcy filing an incurable default "for which no notice shall be required and with respect to which no grace or cure period shall apply." Offered to reduce the default rate from 24% to 21% on perfect performance.

**4.12 Stormfield's own statement of the debt as of September 20, 2024:**

| **Principal balance** | **$1,909,290.00** |
|---|---|
| Interest (4/1/23 – 9/20/24) at the floating rate | 338,053.03 |
| Default interest (5/11/23 – 9/20/24) at 24% less floating | 305,715.96 |
| Consolidated Note exit fee | 16,587.50 |
| Building Note exit fee | 6,000.00 |
| Loan servicing fee | 1,000.00 |
| Force-placed insurance | 818.29 |
| Late charges | 2,471.81 |
| Escrow reserve | (1,038.80) |
| Legal fees | 39,699.45 |
| **Total** | **$2,618,597.24** |

**4.13 The December 5, 2024 payoff demand** asserted **$2,723,559.22**, growing at **$1,272.86 per day** — exactly 24% per annum on $1,909,290 computed on a 360-day year.

**4.14 The growth of the debt.** The trajectory of the asserted debt, against a house purchased for $1,630,000 with $200,000 of family money down, is as follows:

| Date | Source | Amount asserted |
|---|---|---|
| Mar. 11, 2022 | First note (3B Lending) | $1,467,000.00 |
| Nov. 15, 2022 | Consolidated and building notes (total principal) | $2,258,750.00 |
| Sept. 20, 2024 | Stormfield forbearance schedule | $2,618,597.24 |
| Dec. 5, 2024 | Payoff demand | $2,723,559.22 |
| June 16, 2025 | Judgment (as of 9/20/2024) | $2,578,897.79 |
| May 21, 2026 | Claim No. 1 | $3,112,799.26 |

In four years the asserted debt grew by more than $1.6 million — none of it from new money after November 2022, all of it from interest at up to 24%, default charges, exit fees, forbearance fees and legal fees, while $114,737.44 of the original proceeds never left the lender's hands and the construction money was paid directly to the contractor whose work destroyed the house.

**4.15 The complete narrative.** The full history of the loan — every document, every charge, every representation, and every computation — is set out in the adversary complaint described in Section IX, which creditors may obtain from counsel for the Debtor and which will be filed on the docket. This Disclosure Statement summarizes that history; the complaint states it in full, and the Debtor incorporates it here by reference.

## V. THE STATE COURT ACTION

**5.1 Commencement.** December 29, 2023, Supreme Court, Nassau County, Index No. 621084/2023, Polsinelli PC for Stormfield. **Stormfield designated the case on NYSCEF as "Real Property – Mortgage Foreclosure – Commercial."**

**5.2 What that designation meant.** The Summons contains no notice under RPAPL § 1303, no notice under RPAPL § 1320, no allegation of a 90-day notice under RPAPL § 1304, and no allegation of the filing required by RPAPL § 1306. **No settlement conference under CPLR 3408 was ever held.** In the same Summons, Stormfield directed that William Jean Gibbs, Sr. and Steven Gibbs be served **at 131-04 220th Street, Laurelton** — their home.

**5.3 Default.** The Gibbs defendants, unrepresented, did not answer. Default judgment and order of reference entered **September 16, 2024**, appointing Melvyn Roth, Esq. as referee.

**5.4 The Referee's report.** Dated October 7, 2024. The only evidence was **a sworn statement of Joseph Raya**, an employee of Stormfield. No witness testified. The Referee reported **$2,578,897.79** due as of September 20, 2024, exclusive of counsel fees. **That figure is Stormfield's own forbearance schedule of $2,618,597.24 less its single "Legal Fees" line of $39,699.45 — to the penny.** The Referee recommended sale in **two parcels**, including the Laurelton home.

**5.5 The reformation motion — December 30, 2024.** Stormfield moved to reform the Gap Mortgage and the CEMA to insert the legal description of the Queens Property, on the ground that **"for an unknown reason, the legal description for the Queens Property was not included."** The motion was made on default, seventeen days after the December 13, 2024 forbearance deadline expired, and did not disclose to the court that Stormfield had ten weeks earlier offered to release that same lien for $650,000.

**5.6 Judgment.** Order for Reformation, Confirming Referee's Report of Amount Due, and for Judgment of Foreclosure and Sale, entered **June 16, 2025** (Prager, J.).

**5.7 Sale notices.** The notice filed July 30, 2025 for a September 3, 2025 sale describes the premises as "63 Mill River Road, Upper Brookville, NY 11771 **a/k/a 63 Mill River Road, Glen Head, NY 11545**." Glen Head 11545 is the address of the Village of Upper Brookville's own offices. The January 2026 re-notice drops that language. **Both notices state the judgment as approximately $2,578,897.79** — the September 2024 figure — while Stormfield privately asserted $2,723,559.22 and later $3,112,799.26. **Neither notice mentions the Laurelton property**, though the judgment directs its sale.

## VI. THE PRIOR BANKRUPTCY CASE

**6.1** On September 3, 2025, with a foreclosure sale noticed, the family filed a chapter 11 petition, Case No. 8-25-73371-AST. **They filed it without counsel, not knowing that a limited liability company cannot appear pro se.**

**6.2** Counsel was later retained; a Subchapter V election was made and withdrawn; a plan and disclosure statement were filed. **The case was dismissed on December 16, 2025 on the procedural ground that the corporate debtor could not appear pro se. Nothing was decided on the merits.**

**6.3** Seven days later Polsinelli transmitted the dismissal order to Justice Prager and requested a new auction date. A sale was noticed for February 23, 2026.

## VII. THIS CASE

**7.1 Filing.** March 18, 2026, with counsel. Schedules and statements filed April 1, 2026. Section 341 meeting concluded April 17, 2026. Counsel retained by order entered June 5, 2026, effective as of the petition date.

**7.2 The stay motion.** April 2, 2026: Stormfield moved for immediate and prospective in rem relief under § 362(d)(4) and for dismissal (Dkt. 16), supported by the **Declaration of Joseph Raya**, which states at ¶ 5 that 63 Mill River Road is "non-residential real property" and at ¶ 11 that 131-04 220th Street is "non-residential real property." **Stormfield's own appraisal describes the former as "1 FAMILY RESIDENTIAL," and Stormfield's own Summons served Mr. Gibbs, Sr. at the latter.** Exhibit K to the motion is the broker price opinion dated March 19, 2026 — the day after the petition.

**7.3 The May 15 order (Dkt. 25).** The Court (Trust, J.) directed adequate protection payments of $12,500 on May 1 and June 1, 2026, providing that if either was "not timely received" the stay would be modified. **The order contained no notice-and-cure provision.**

**7.4 The payments.** Both were made in full, funded personally by Dr. Gibbs, Jr.: the May installment in two wires of $9,000 and $3,500 from the TD Bank account of Jamaica Healthy Medical PC, **received May 11, 2026**; the June installment **received June 11, 2026**. **The Debtor discloses candidly that each arrived approximately ten days after its due date.** Stormfield accepted both, retained both, returned nothing, and gave no notice that it regarded either as untimely. A third payment of $12,500 was made voluntarily in July, and the August payment has been made.

**7.5 Reassignment and hearings.** Case reassigned to Judge Mastando effective June 8, 2026. Hearings held June 11 and July 8, 2026.

**7.6 The June 18 letter.** On June 18, 2026 Polsinelli wrote to Justice Prager representing that this Court had entered an "Order Granting Relief from Stay," and requested a foreclosure auction date — without first asking this Court to determine that the condition in the May 15 order had been triggered.

**7.7 The July 29 order (Dkt. 32).** After the July 8 hearing the Court extended the automatic stay **through September 10, 2026**; required adequate protection of $12,500 on August 1, September

1 and October 1, 2026, with the stay to modify only if a payment is more than **five days** late **and** Stormfield files a notice of default on the docket; and directed that the Debtor file a plan and disclosure statement by **August 3, 2026**. Stormfield has canceled the sale it had scheduled for August 18, 2026.

**7.8 Claims.** The bar date was June 30, 2026. **Claim No. 1, filed by Stormfield on May 21, 2026 in the amount of $3,112,799.26, is the only claim filed.** The governmental bar date is September 14, 2026. Nassau County has not filed. Shoppers World Construction Corp. has not filed.

## VIII. ANALYSIS OF CLAIM NO. 1

**8.1 The claim as filed** asserts $3,112,799.26, of which $1,999,000.00 is asserted as secured and $1,113,799.26 as unsecured. It is signed under penalty of perjury by **Joseph Raya**. **The only document attached is the Judgment of Foreclosure and Sale** — no note, no mortgage, no CEMA, no guaranty, no payment history, no itemization.

**8.2 The claim's own computation:**

| **Judgment** | **$2,578,897.79** |
|---|---|
| Interest 9/20/2024 – 5/29/2025 (default rate on the UPB) | 319,487.86 |
| "Total Judgment Amount" | **2,903,730.65** |
| Post-judgment interest 5/30/2025 – 3/18/2026 | 209,068.61 |
| **Total Claim Amount** | **$3,112,799.26** |

**8.3 The arithmetic does not work.** $2,578,897.79 plus $319,487.86 is **$2,898,385.65**, not $2,903,730.65. **The claim overstates its own subtotal by $5,345.00 on its face.** Post-judgment interest was then computed on the inflated subtotal, adding a further $384.84. The total overstatement apparent from the four numbers on the page is **$5,729.84**.

**8.4 Both interest components are exact to the penny.** 251 days at $1,272.86 produces $319,487.86 without remainder — precisely 24% per annum on a 360-day year. 292 days at 9% on $2,903,730.65 produces $209,068.61 without remainder. **Every figure that was computed was computed correctly. The one number that was not computed is the one that was overstated.**

**8.5 The claim credits no payment received after September 20, 2024**, notwithstanding the $50,000 delivered under the Forbearance Agreement, of which Stormfield agreed $11,814.20 "shall be applied to the Loan," and the $15,000 monthly payments the agreement required.

**8.6 The Debtor's objections.** The Debtor has objected and will object on the grounds that: the obligations are void under N.Y. Gen. Oblig. Law §§ 5-501 and 5-511; the charges are disguised interest; the claim is subject to recoupment under 15 U.S.C. §§ 1640(e) and (k); no payments after September 2024 are credited; the claim was filed without the documentation Fed. R. Bankr. P. 3001(c) requires and is not entitled to prima facie validity under Rule 3001(f); and the claim's own components do not produce its own subtotal.

## IX. THE LITIGATION

**9.1 The Adversary Proceeding.** The Debtor and William Jean Gibbs, Sr. have prepared and will shortly file an action against Stormfield Capital Funding I, LLC, Stormfield Capital, LLC, Wesley W. Carpenter, Joseph Raya, JB Lending LLC, 3B Lending LLC, Joseph Rosen and Tao Investment Group. **Counsel for Stormfield is not a defendant.**

**9.2 The claims asserted** include: violations of RICO, 18 U.S.C. § 1962(a), (b), (c) and (d), founded both on the collection of unlawful debt under § 1961(6) and on a pattern of racketeering activity; criminal and civil usury under N.Y. Gen. Oblig. Law §§ 5-501, 5-511 and 5-521 and N.Y. Penal Law § 190.40; the Truth in Lending Act; the Home Ownership and Equity Protection Act; the Truth in Lending Act's ability-to-repay requirements, 15 U.S.C. § 1639c; the Real Estate Settlement Procedures Act; N.Y. Banking Law § 6-l; unlicensed mortgage lending and brokering; N.Y. General Business Law § 349; negligent administration of construction loan disbursements; breach of fiduciary duty; economic duress; equitable subordination under 11 U.S.C. § 510(c); fraud, fraud in the factum and fraudulent concealment; unconscionability; slander of title; unjust enrichment; and an accounting.

**9.3 The core theory.** The lender required a family home to be titled in a single-purpose entity so that a consumer home loan could be papered as a commercial one, and thereby escape the Truth in Lending Act, the Home Ownership and Equity Protection Act, N.Y. Banking Law § 6-l, New York's usury statutes, and the notice and settlement-conference protections New York gives to homeowners facing foreclosure.

**9.4 The usury computation.** Measured against the sum actually advanced ($1,544,012.56 after the $114,737.44 retained at closing), and including all charges imposed as an incident to the

extension of credit, the effective annual rate was **not less than 34.68%**, and with the charges actually imposed, **40.00%**. Even at the non-default contract rate it was **20.43%**. New York's civil ceiling is 16% and its criminal ceiling is 25%.

**9.5 Why the corporate borrower does not defeat the usury claim.** N.Y. Gen. Oblig. Law § 5-521(3) removes the corporate bar where the entity's principal asset is a one- or two-family dwelling and the entity was organized within six months before the mortgage. **The Debtor was formed January 25, 2022; the mortgage is dated March 11, 2022 — forty-five days later.**

**9.6 Where the proceeds go.** Any recovery in the Adversary Proceeding on the Debtor's own claims is **property of the estate and of the Reorganized Debtor**. Mr. Gibbs, Sr.'s personal claims — for the encumbrance of his own residence, his guaranty exposure and his own contributions — are his and are not property of this estate.

**9.7 The risks are real and are described in Section XIII.**

## X. SUMMARY OF THE PLAN

**10.1** The Plan is summarized in Section 1.4 and is set out in full in the accompanying document, which controls.

**10.2 The central mechanism.** Stormfield is paid in cash on the Effective Date the portion of its claim no one disputes. It **retains its liens** to secure the disputed balance. It continues to receive $12,500 a month. Within thirty days after a Final Order determining the Claim Objection and the Adversary Proceeding, it is paid whatever is finally Allowed above the Effective Date payment, with interest from the Effective Date so that it receives present value.

**10.3 Why the Plan is structured this way.** A plan should not require a debtor, or an 86-year-old man's family, to pay or to escrow millions of dollars on account of a claim that a court has not found to be owed and that the Debtor contends is void. Under 11 U.S.C. § 1129(b)(2)(A)(i) a secured creditor is fairly and equitably treated if it retains its lien and receives deferred cash payments of a present value not less than its interest in the collateral. That is what the Plan provides.

**10.4 In the alternative**, if Stormfield objects to the deferral, the Plan permits the disputed portion to be funded into a segregated escrow on the Effective Date, with Stormfield's liens released in full and the escrow standing in place of the collateral.

**10.5 Means of implementation and management.** The Plan is implemented through the Exit Financing and the Family Contribution described in Section XI. William Jean Gibbs, Sr.

continues as sole member and manager of the Reorganized Debtor; **no compensation is paid to him or to any insider on account of the Plan**. 11 U.S.C. § 1129(a)(5). No securities are issued under the Plan.

**10.6 Retained claims and avoidance actions.** The Plan preserves, and vests in the Reorganized Debtor, all Causes of Action of the estate — the Claim Objection, the Adversary Proceeding, the claims against Shoppers World Construction Corp., equitable subordination under 11 U.S.C. § 510(c), and all avoidance and recovery actions under §§ 542–553 — itemized in the Schedule of Retained Causes of Action annexed to the Plan as Exhibit A. **The Debtor is aware of no avoidable transfer to any insider**: the flow of money in this case has run from the family into the Property and to Stormfield, not out.

**10.7 Executory contracts.** All executory contracts and unexpired leases not previously assumed are rejected as of the Effective Date, except any listed for assumption before the confirmation hearing. Rejection claims must be filed within thirty days of the Effective Date.

**10.8 Effect of confirmation.** The Plan binds the Debtor and every creditor and interest holder whether or not they voted and whether or not they accepted. 11 U.S.C. § 1141(a). Confirmation discharges the Debtor to the extent provided in § 1141(d); property vests in the Reorganized Debtor subject to the liens the Plan preserves; the automatic stay remains in effect only until the Effective Date, after which the Plan's injunction — which expressly permits Stormfield to litigate the allowance of its Claim and to enforce the Plan — takes its place. **No third-party release, and no injunction protecting any non-debtor, is granted.** 11 U.S.C. § 524(e); *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

**10.9 Tax exemption.** The Plan invokes 11 U.S.C. § 1146(a), under which instruments made, delivered or recorded under a confirmed plan — including the mortgage securing the Exit Financing — are exempt from stamp and similar taxes, including the New York mortgage recording tax. The Exit Financing will close and be recorded after confirmation, pursuant to and in implementation of the Plan.

**10.10 Alternative confirmation structures.** Article XIII of the Plan preserves, in the alternative, a cramdown structure with separate classification of Stormfield's guaranteed deficiency, and a Subchapter V structure. **The Debtor discloses that the first is the minority rule and may not be confirmable, and that the second is likely unavailable**: the temporary $7,500,000 subchapter V ceiling expired by statute on June 21, 2024; eligibility now turns on the

lower debt limit of 11 U.S.C. § 101(51D), which the filed debt appears to exceed; and the time to elect has passed.

## XI. FEASIBILITY

**11.1 The test.** Confirmation requires that the Plan is not likely to be followed by liquidation or the need for further reorganization. 11 U.S.C. § 1129(a)(11).

**11.2 Sources.**

| Source | Amount | Status |
|---|---|---|
| Exit financing, secured by a first mortgage | $[2,200,000] | TBA |
| Family contribution — Dr. William J. Gibbs, Jr. and family | $[600,000] | |
| **Total** | **$[2,800,000]** | |

**11.3 Uses.**

| Use | Estimated |
|---|---|
| Nassau County real property taxes | $67,573 |
| Administrative claims, including professional fees | $[__] |
| Shoppers World mechanic's lien | $[__] |
| Undisputed portion of the Stormfield Claim | $[__] |
| Reserve for the deferred payment under Plan § 4.3(c) | $[__] |
| **Total** | **$[__]** |

**11.4 The Debtor discloses candidly** that Collier and the case law in this Circuit treat a plan funded by financing rather than operations as requiring proof that the money is committed, and that plans resting on future refinancings without an adequate showing have been denied confirmation. The Debtor will place before the Court at confirmation the executed commitment and evidence of the family contribution.

**11.5 Ongoing obligations.** The Reorganized Debtor's only continuing obligations are the new mortgage, real property taxes and insurance. Dr. Gibbs, Jr. resides at the Property and has funded every payment made in this case.

## XII. LIQUIDATION ANALYSIS

**12.1 The test.** Each holder of an impaired claim must receive at least what it would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7).

**12.2 In a chapter 7** the trustee would sell the Property "as is," in its damaged condition, into a forced-sale market.

| | **Chapter 7** | **The Plan** |
|---|---|---|
| Gross realization | $1,900,000 – $1,999,000 | $[2,800,000] available |
| Trustee's commission (§ 326) | ~$67,000 | none |
| Trustee's professionals | $[__] | none |
| Broker's commission | ~5% (~$97,000) | none |
| Class 1 (taxes) | paid | **paid in full** |
| Class 2 (Stormfield) | partial | **paid in full as Allowed** |
| Class 3 (mechanic's lien) | likely nothing | **paid in full as Allowed** |
| Class 4 (unsecured) | **nothing** | **paid in full** |
| Class 5 (equity) | nothing | retained |

**12.3** A chapter 7 trustee would also be unlikely to prosecute the Adversary Proceeding, which requires substantial resources and which the family is funding. **Every class does better under the Plan.**

## XIII. RISK FACTORS

**Creditors should read this section carefully.**

**13.1 The amount owed to Stormfield has not been determined**, and the Debtor's position on that question may not prevail. If Stormfield's claim is Allowed in full at $3,112,799.26 or more, the funding described in Section XI may be insufficient, and the Debtor may be required to seek additional financing, to sell the Property, or to consent to modification of the Plan.

**13.2 The litigation is difficult.** The claims described in Section IX are contested, novel in part, and expensive. RICO claims are frequently dismissed at the pleading stage. The usury computation depends on charges being characterized as disguised interest. The Truth in Lending and HOEPA claims depend on the entity borrower being disregarded, which requires the Court to find that the entity was imposed to evade those statutes.

**13.3 The state court judgment.** A default Judgment of Foreclosure and Sale was entered June 16, 2025. Stormfield will contend that it precludes the Debtor's claims and defenses. The Debtor

will contend that nothing was actually litigated, that New York's permissive counterclaim rule applies, that the judgment was procured by concealment, and that the allowance of a claim in bankruptcy is committed to this Court by 11 U.S.C. § 502. **That dispute has not been resolved and the Debtor may lose it.**

**13.4 Federal preemption.** Stormfield may contend that 12 U.S.C. § 1735f-7a preempts New York's usury law. The Debtor will contend that preemption reaches only first liens on residential real property held by TILA creditors, that Stormfield has sworn the properties are non-residential and denied being a TILA creditor, and that the Building Loan Mortgage is junior. **This too is unresolved.**

**13.5 Financing risk.** The exit financing has not closed. Commitments may expire, conditions may fail, and the family contribution depends on the continued resources of Dr. Gibbs, Jr.

**13.6 The stay expires September 10, 2026** unless extended, and adequate protection payments of $12,500 are due September 1 and October 1, 2026. A missed payment, if more than five days late and followed by a notice of default, modifies the stay.

**13.7 Dismissal risk.** Dkt. No. 32 provides that failure to file a plan and disclosure statement by August 3, 2026 is cause to dismiss under 11 U.S.C. § 1112(b).

**13.8 The prior case was dismissed.** Stormfield has sought and may again seek in rem relief under § 362(d)(4) on the theory that these filings are part of a scheme. The Debtor contends that the first case was dismissed on a purely procedural ground and that its conduct in this case — schedules, a concluded § 341 meeting, counsel retained, full briefing, $37,500 and more in adequate protection paid, and this Plan — refutes any such theory.

**13.9 The Queens property.** 131-04 220th Street, Laurelton is not property of this estate. **This Plan does not and cannot protect it directly.** Payment of Stormfield's Allowed Claim in full would satisfy the underlying debt and thereby extinguish the guaranties and the cross-collateral lien — but that result follows from satisfaction of the debt, not from any release, and **no third-party release is granted by this Plan.** 11 U.S.C. § 524(e); *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024).

**13.10 Motions the Debtor anticipates.** Stormfield may object to approval of this Disclosure Statement on the ground that the Plan is unconfirmable on its face; the Debtor will respond that a disclosure statement hearing is not a confirmation hearing and that a plan is denied approval at this stage only for fatal facial defects not curable by voting and not dependent on disputed facts.

Stormfield may also move to dismiss or convert under 11 U.S.C. § 1112(b), or for a chapter 11 trustee under § 1104. The Debtor discloses these risks and its answers: the appointment of a trustee is an extraordinary remedy requiring clear and convincing evidence, there is a strong presumption that a debtor remains in possession, and the vigorous defense of a disputed claim is not "cause"; but the outcome of any such motion cannot be guaranteed.

**13.11 Voting structure.** Classes 1, 2, 3 and 4 are impaired and vote. If Stormfield contends that the impairment of Classes 1, 3 or 4 is artificial and that Stormfield's rejecting class is the only genuinely impaired class, confirmation would require the Debtor to satisfy 11 U.S.C. § 1129(a)(10) and § 1129(b). The Debtor believes the impairment of each class is real — each waits until the Effective Date and takes payment on the Plan's terms rather than its contractual or statutory ones — but discloses the issue.

**13.12 Position consistency.** The Debtor asserts that the loan is in substance a consumer home loan. That characterization concerns the purpose of the credit and the character of the property; it is not inconsistent with the Debtor's status as an entity in this case.

## XIV. ALTERNATIVES TO THE PLAN

**14.1 Chapter 7 liquidation** — analyzed in Section XII. Every class does worse.

**14.2 Dismissal** — the automatic stay would end, the June 16, 2025 judgment would be enforceable, and a foreclosure sale would be re-noticed. Unsecured creditors would receive nothing. The Debtor's claims would survive as claims but the family would likely lose the house before they could be adjudicated.

**14.3 An alternative plan** — no other party has proposed one. Exclusivity considerations aside, the Debtor is aware of no alternative that pays creditors more.

## XV. TAX CONSEQUENCES

**15.1** The Debtor is a single-member limited liability company and, on information and belief, a disregarded entity for federal income tax purposes. It has no net operating losses of significance and does not expect to realize cancellation-of-indebtedness income, because the Plan contemplates payment of Allowed Claims in full.

**15.2 The Debtor has not obtained a tax opinion and offers none. Creditors should consult their own tax advisors. Nothing in this Disclosure Statement is tax advice.**

## XVI. RECOMMENDATION

**16.1** The Debtor believes the Plan provides the greatest recovery to creditors, pays every Allowed Claim in full, preserves the family home, and does so without requiring anyone to pay a claim before a court has determined it is owed.

**16.2 The Debtor recommends that all creditors entitled to vote vote to ACCEPT the Plan.**

Dated: New York, New York
August 3, 2026

**63 MILL RIVER ROAD LLC**

By: /s/*Williamjgibbs*
William Jean Gibbs, Sr.
Sole Member and Manager

**DAHIYA LAW OFFICES LLC**
By*: s/karamvirdahiya*
Karamvir Dahiya, Esq.
111 John Street, Suite 1860
New York, New York 10038
(212) 766-8000
*Counsel for the Debtor and Debtor-in-Possession*