POLSINELLI PC
Aaron P. Davis
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 803-9918
adavis@polsinelli.com

*Attorneys for Stormfield Capital Funding I, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>63 MILL RIVER ROAD LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 8-26-71066-AST |

**OBJECTION TO PLAN AND DISCLOSURE STATEMENT**

Creditor and party-in-interest Stormfield Capital Funding I, LLC ("**Lender**"), by and through its undersigned counsel, and pursuant to 11 U.S.C. §§ 1125 and 1128(b) hereby objects to 63 Mill River Road LLC's ("**Debtor**") Chapter 11 Plan and Disclosure Statement (the "**Plan and Disclosure Statement**"). In support, Lender states as follows:

**INTRODUCTION**

1. As an initial matter, Lender specifically reserves the right to supplement this Objection in the event a hearing on the Plan and Disclosure Statement is scheduled, and/or the Trustee's Motion to Dismiss or Convert is not granted.

2. The Plan and the Disclosure Statement describe a facially unconfirmable plan whose central framework depends on setting aside a final judgment in foreclosure, manufacturing voting classes, reserving nonexistent legal power to override the preclusion doctrine, and promising payment under the plan from financing that does not currently exist in an unspecified amount.

3. Debtor somehow argues that Lender's claim is "disputed." It is not. Lender holds a final, unappealed Judgment of Foreclosure and Sale fixing the indebtedness and adjudicating Lender's right to enforce its mortgage; that judgment is entitled to full faith and credit under 28 U.S.C. § 1738 and cannot be stripped of its preclusive effect merely because the Debtor has now filed, or threatens to file, an objection to Stormfield's proof of claim. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir. 1987).

4. 11 U.S.C. § 502(b) does not authorize a debtor to use the claims-allowance process to relitigate liability and indebtedness already reduced to final judgment under applicable non-bankruptcy law. More importantly, as of the writing of this Objection, **<u>Debtor has not objected to Lender's claim</u>**.

## <u>RELEVANT FACTUAL BACKGROUND</u>

5. Lender relies on the Declaration of Joseph Raya (the "**Raya Declaration**") submitted in support of Lender's Motion for Relief from Stay for the relevant factual background related to the Loan transaction.

6. As explained in the Raya Declaration, the Honorable Erica L. Prager entered an Order for Reformation, Confirming Referee's Report of Amount Due and for Judgment of Foreclosure and Sale ("**Final Judgment**") on June 16, 2025. Attached hereto as **Exhibit A** is a true and correct copy of Final Judgment.

7. On June 30, 2025, Lender filed a Notice of Entry with respect to the Final Judgment. Attached hereto as **Exhibit B** is a true and accurate copy of the Notice of Entry.

8. Thus, pursuant to CPLR 5513, Debtor had until July 30, 2025 to file a Notice of Appeal with respect to the Final Judgment.

9. Debtor failed to appeal the Final Judgment, and its time to do so has since expired.

10. The instant petition was filed on March 18, 2026.

11. Lender filed its Proof of Claim on May 21, 2026 in the amount of $3,112,799.26. As part of the Proof of Claim, Lender included a Claim Calculation based on the Final Judgment. Debtor attempts to raise an issue that the Claim Amount is facially invalid; however, Debtor is ignoring the following costs included in Final Judgment: (a) referee's fee in the amount of $750.00; (b) costs and disbursements in the amount of $3,795.00; (c) additional allowance in the amount of $300.00; and (d) attorneys' fees in the amount of $500.00. *See* Ex. A. Including the allowable costs under Final Judgment, as well as pre and post judgment interest, the total amount of Lender's claim is **$3,112,799.26**.[1]

12. Debtor has made certain adequate protection payments since the inception of this action, all were made after Lender filed its proof of claim.

13. No other party has filed a proof of claim in this matter.

## THE PLAN CANNOT BE CONFIRMED BECAUSE IT DOES NOT SATISFY THE MANDATORY REQUIREMENTS OF 11 U.S.C. § 1129

### A. Debtor Cannot Manufacture a "Dispute" Concerning Lender's Claim by Collaterally Attacking a Final, Unappealed Judgment of Foreclosure and Sale

14. The Plan's central premise, that Lender's claim is "disputed in substantial part," is legally incorrect. Final Judgment was entered on June 16, 2025, and it has not been appealed, vacated or reversed. Under 28 U.S.C. § 1738, this Court must give the judgment the same preclusive effect it would receive in New York courts. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694–95 (2d Cir. 1987).

[1] Debtor disingenuously makes reference to an October 2024 forbearance agreement. The forbearance agreement was neither funded nor executed. Attached hereto as **Exhibit C** is a true and accurate copy of an email exchange with Debtor's principal rescinding the forbearance offer.

15. *Kelleran* involved a New York default judgment: the Second Circuit held that a bankruptcy court could not disregard the judgment and revisit the underlying liability merely because it considered the creditor's claim meritless. *Id. at 694–95*. New York law is equally clear that "[a] judgment of foreclosure and sale is final as to all questions at issue between the parties, and concludes all matters of defense which were or could have been litigated in the foreclosure action," and that "[a] judgment of default which has not been vacated is conclusive for res judicata purposes, and encompasses the issues which were raised or could have been raised in the prior action." *Tromba v. E. Fed. Sav. Bank, FSB*, 148 A.D.3d 753, 754 (2d Dep't 2017); *see also Tracey v. Deutsche Bank Nat'l Tr. Co.*, 187 A.D.3d 815, 817 (2d Dep't 2020).

16. Further, 11 U.S.C. § 502 does not permit the Debtor to circumvent res judicata by simply filing an objection to Lender's claim. Section 502(a) provides that a filed proof of claim is deemed allowed unless objected to; § 502(b) then directs the Court, upon objection, to determine and allow the claim except to the extent one of the statutory grounds for disallowance exists. Those provisions establish a claims-allowance procedure; they do not authorize the bankruptcy court to disregard the preclusive effect of a final state-court judgment. *Kelleran*, 825 F.2d at 694–95.

17. Because the Plan's treatment of Lender's claim is premised on disregarding the binding effect of a final, unappealed judgment and treating an adjudicated debt as though liability remained unresolved, the Plan does not comply with applicable law and therefore cannot satisfy the mandatory confirmation requirement of 11 U.S.C. § 1129(a)(1).

## B. Cramdown is Inappropriate Because the Plan Does Not Provide the Treatment Mandated by 11 U.S.C. § 1129(b)(2)(A)

18. As Lender will not accept the Plan, the Debtor can only confirm a Plan over Stormfield's objection by satisfying the cramdown requirements of 11 U.S.C. § 1129(b). Section 1129(b)(1) requires that the Plan be "fair and equitable" with respect to each impaired rejecting

class, and, for a secured creditor, § 1129(b)(2)(A)(i) requires that the creditor retain its liens to the extent of its allowed secured claim and receive deferred cash payments totaling at least the allowed amount of the claim, having a value, as of the Effective Date, of at least the value of the creditor's interest in the collateral. 11 U.S.C. § 1129(b)(2)(A)(i)(I)–(II).

19. As the Supreme Court explained in *Till v. SCS Credit Corp.*, where a debtor proposes future payments rather than immediate payment, those payments must be structured so that their aggregate present value equals or exceeds the value of the secured claim. 541 U.S. 465, 474–75 (2004).

20. The Plan does no such thing. Instead, it proposes to pay Stormfield an unidentified "undisputed portion" on the Effective Date and to defer the remainder until thirty days after a "Final Order" resolving both the Debtor's claim objection and contemplated adversary proceeding, a date that is entirely indeterminate and could follow years of litigation and appeals. The Plan supplies no principal amount for the deferred obligation, no amortization schedule, no maturity date, and no fixed stream of payments from which the Court could determine present value; it merely proposes $12,500 monthly interim payments while the litigation remains pending and leaves the applicable "Plan Interest Rate" for later determination. The Disclosure Statement confirms this: Lender is to receive the Debtor's self-determined "undisputed" amount, retain liens against the balance, and wait until the conclusion of the Debtor's litigation (<u>**against Lender**</u>) to receive whatever the Debtor ultimately fails to eliminate. That is not what is contemplated by § 1129(b)(2)(A)(i), because there is no defined stream of deferred payments whose value as of the Effective Date can be tested against the statutory present-value requirement. *Till*, 541 U.S. at 469 ("[T]he amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim.").

21. Nor does the Plan satisfy the lien-retention requirement merely by stating that Lender will retain some lien pending the Debtor's collateral litigation. Section 1129(b)(2)(A)(i)(I) requires retention of the liens securing the allowed secured claim, while the Plan instead proposes to release Stormfield's liens corresponding to the Debtor's self-selected "undisputed portion" upon payment and retain the balance only "in the amount ultimately Allowed." The Debtor cannot substitute its own contingent claims-resolution mechanism for the protections Congress prescribed for a rejecting secured creditor.

22. Because the Plan fails to provide Stormfield the lien retention and ascertainable deferred-payment treatment mandated by § 1129(b)(2)(A), it is not "fair and equitable" within the meaning of § 1129(b)(1) and cannot be confirmed over Stormfield's rejection.

C. The Plan is Not Feasible Because the Debtor Has Failed to Demonstrate Any Committed Financing Sufficient to Fund the Plan

23. Section 1129(a)(11) permits confirmation only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor." 11 U.S.C. § 1129(a)(11). A plan must provide a "reasonable assurance of success," even though success need not be guaranteed. *DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 105 (2d Cir. 2011) (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988)).

24. Courts in this District have emphasized that § 1129(a)(11) requires the debtor to demonstrate that it can actually accomplish what the plan proposes, on the terms and within the time contemplated by the plan. *In re 20 Bayard Views, LLC*, 445 B.R. 83, 101–02 (Bankr. E.D.N.Y. 2011). "Plans which extensively rely on the sale or refinance of real property that constitutes a debtor's primary or sole significant asset, and where the asset has been a marginal performer to date, are inherently speculative and invite close judicial scrutiny of the assumptions

of the underlying plan." *In re 8315 Fourth Ave. Corp.*, 172 B.R. 725, 735 (Bankr. E.D.N.Y. 1994) (citing *In re Investors Fla. Aggressive Growth Fund, Ltd.*, 168 B.R. 760, 765 (Bankr. N.D. Fla. 1994); *see also In re Bashas' Inc.*, 437 B.R. 874, 916 (Bankr. D. Ariz. 2010) ("A court may not confirm a plan if its feasibility depends on future refinancing, unless there is an adequate evidentiary showing that such refinancing is likely to occur.").

25. The Debtor has made no such showing. The Debtor admittedly has no employees, no operations, and no revenue; its sole material asset is the Property. Thus, the Plan can be funded only through the supposed "Exit Financing" and family contribution. Yet the Disclosure Statement identifies approximately $2.2 million of exit financing from no identified lender and lists its status simply as "TBA." The anticipated $600,000 family contribution is likewise only an estimate. More fundamentally, the Debtor does not even identify the amount of money necessary to consummate the Plan: administrative expenses are blank, the Shoppers World claim is blank, the amount to be paid to Lender on the Effective Date is blank, the amount of any reserve is blank, and total uses are blank. The Disclosure Statement therefore does not contain evidence of financing sufficient to fund the Plan; it contains only an aspiration to obtain financing of an approximate amount from an unidentified source.

26. The Debtor cannot satisfy § 1129(a)(11) by promising that an executed financing commitment and evidence of the family contribution will appear at some later date. Indeed, the Disclosure Statement expressly acknowledges that plans funded by financing rather than operations require proof that the necessary funds are committed, while conceding that the Debtor intends to produce that proof only at confirmation. On the present record, there is no committed lender, no demonstrated ability to fund the promised distributions, and not even a completed sources-and-uses analysis from which feasibility could be tested. The Plan therefore offers no

"reasonable assurance of success" and cannot satisfy the mandatory confirmation requirement of 11 U.S.C. § 1129(a)(11).

**RESERVATION OF RIGHTS**

27. Lender specifically reserves the right to supplement this Objection in the event a hearing on the Plan and Disclosure Statement is scheduled, and/or the Trustee's Motion to Dismiss or Convert is not granted.

WHEREFORE Lender respectfully requests that the Court enter an Order: (i) denying approval of the Disclosure Statement pursuant to 11 U.S.C. § 1125 because it describes a Plan that is facially unconfirmable; (ii) denying confirmation of the Plan pursuant to 11 U.S.C. § 1129, including §§ 1129(a)(1), 1129(a)(11), and 1129(b)(2)(A); (iii) determining that the Debtor may not treat Stormfield's final, unappealed foreclosure judgment as a "disputed"; (iv) requiring that any amended plan recognize and provide treatment consistent with the binding effect of the state-court judgment and the protections afforded to Lender as a secured creditor under the Bankruptcy Code; and (v) granting Lender such other and further relief as the Court deems just and proper.

Dated: August 20, 2026
New York, New York

POLSINELLI PC

By: */s/ Aaron P. Davis*

AARON P. DAVIS
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 803-9918
adavis@polsinelli.com

ATTORNEYS FOR
STORMFIELD CAPITAL FUNDING I, LLC

## **CERTIFICATE OF SERVICE**

I, Aaron P. Davis, hereby certify that on the 20th day of August, 2026, a true and correct copy of the foregoing *Objection to Plan and Disclosure Statement* was served electronically to Debtor's counsel, the U.S. Trustee, and the interested parties who have requested notice by ECF notification from the court in this case.

*/s/ Aaron P. Davis*