UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X

In re:

63 MILL RIVER ROAD LLC, Chapter 11

Debtor. Case No. 8-26-71066-spg

--------------------------------------------------X

**DECLARATION OF DR. WILLIAM J. GIBBS, JR. UNDER 28 U.S.C. § 1746 IN SUPPORT OF THE DEBTOR'S RESPONSE TO THE OBJECTION OF STORMFIELD CAPITAL FUNDING I, LLC TO THE PLAN AND DISCLOSURE STATEMENT**

WILLIAM J. GIBBS, JR. declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

**I. Who I Am, and the Limited Purpose of This Declaration**

1. I am Dr. William J. Gibbs, Jr., a physician licensed to practice in the State of New York. I am the son of William Jean Gibbs, Sr., the sole member and manager of the debtor, 63 Mill River Road LLC. I am not a member of the Debtor and hold no equity interest in it. I reside at 63 Mill River Road, Upper Brookville, New York (the "Property"), which is the Debtor's principal asset.

2. I am not represented by Dahiya Law Offices LLC in my individual capacity. That firm represents the Debtor. I submit this declaration as a witness, on personal knowledge, because several of the matters raised in the Objection of Stormfield Capital Funding I, LLC [ECF No. 36] concern events in which I personally took part and about which no one else can testify from knowledge.

3. I confine this declaration to facts. I do not offer any opinion about the law, about the effect of the state court's judgment, or about whether the Plan can be confirmed. Those are matters for counsel and for the Court. Where I do not know something, I say so.

4. I am separately submitting a declaration concerning the funding of the Plan — my income, the family contribution and the exit financing. I do not repeat that material here.

## II. The October 2024 Forbearance Agreement Was Never Signed, Never Funded, and Never Agreed To

5. This is the most important thing I have to say, and I say it first because I want the Court to have it from me directly rather than through argument.

6. In or about October 2024, Stormfield, through its counsel, presented my family with a proposed written Forbearance Agreement. I read it. I was not prepared to enter into it, and we did not.

7. Specifically, and of my own knowledge:

— We never signed or executed the Forbearance Agreement. No member of my family executed it, and I have never seen an executed counterpart.

— We never made the $50,000.00 entry payment that the proposal required. No part of it was paid, by me, by my father, by my professional corporation, or by anyone on our behalf.

— Stormfield never received or retained the $38,185.80 "non-refundable forbearance fee" described in the proposal, because the payment from which it was to be taken was never made.

— We never gave the releases contained in the proposal.

— We never agreed to, and never signed, the statement in section 13 of the proposal that the omission of the legal description of the Queens property from the recorded instruments was a "scrivener's error." That characterization was Stormfield's. It

appeared in a document Stormfield's counsel drafted and sent to us. We never adopted it.

— We never became bound by the provision making a bankruptcy filing an incurable default, or by any other term of the proposal.

— The provision requiring $650,000.00 for release of the Queens property was something Stormfield proposed and demanded. It was not a term we accepted.

8. Stormfield agrees with me on this. Exhibit C to its Objection is an electronic mail message dated December 1, 2024 from its counsel, addressed to me, stating that Stormfield "is officially rescinding the forbearance offer as it was never fully executed nor funded." I received that message. It is accurate.

9. I am informed that the Debtor's Plan and Disclosure Statement describe the forbearance in places as though it had been executed and the $50,000.00 paid. That is incorrect, and I told the Debtor's counsel so as soon as I identified it, on September 8, 2026. I understand the Debtor is correcting those documents. I want the record to show that the correction originated with me and that I raised it at the first opportunity.

## III. I Was Never a Party to the Foreclosure Action

10. I was never named as a defendant in the foreclosure action Stormfield commenced in the Supreme Court, Nassau County, Index No. 621084/2023. I was never served with a summons or complaint in that action. I never appeared in it, never answered, and was never heard by that court on anything. No one appeared in that action on my behalf.

11. I first learned of the Order for Reformation, Confirming Referee's Report of Amount Due and for Judgment of Foreclosure and Sale — the judgment Stormfield annexes as

Exhibit A to its Objection — only after the property was scheduled to be sold. Whatever that judgment decided, it was not decided in any proceeding in which I was a party or had an opportunity to be heard.

### IV. My Position on the March 11, 2022 Note

12. I am named personally as a borrower on the promissory note dated March 11, 2022, which names as borrower "63 MILL RIVER ROAD LLC AND DR. WILIAM J. GIBBS, JR." To my knowledge I am the only natural person named as a borrower on that note. I also signed a guaranty in connection with that loan.

13. I never received, at the March 11, 2022 closing or at any time afterward: a loan application; any request to verify my income or assets; any credit report; any calculation of my ability to repay; an appraisal; a Loan Estimate; a Closing Disclosure, HUD-1 or settlement statement; any disclosure of an amount financed, finance charge or annual percentage rate; any notice of a right to rescind; any high-cost mortgage disclosure; or any homeownership counseling certificate. I have never received any of those documents from Stormfield either.

14. I did not send Stormfield a separate written notice of rescission before November 15, 2025. I have searched my records for one and have not found one, and I do not believe one was sent.

### V. The Property

15. My family agreed to purchase the Property in November 2021 as a home. The contract of sale names me personally — "William Gibbs, M.D." — as purchaser, with the words "or entity to be formed" added by hand. My family contributed $200,000.00 of its savings to the purchase. The Debtor did not exist when we agreed to buy the house; it was formed afterward because the lender required that title be held by a single-purpose entity.

16. I reside at the Property and safeguard it.

17. The Property is a single-family residence. It was bought as my family's home. Except for a temporary post-closing arrangement under which the prior owner remained at the Property for approximately three months, from approximately April through June 2022, the Property has not been rented to third parties or operated as an income-producing rental property. Since that temporary arrangement ended, it has had no tenants and has generated no rental income.

18. There is one qualification, and I state it so that the record is exact. At the March 11, 2022 closing, the sellers, Richard F. McCormick and Ilia J. McCormick, and the Debtor entered into a Post Closing Possession Agreement dated March 11, 2022. Under that agreement the sellers had the right to remain in possession of the pool house on the Property — not the residence — for a period of up to three (3) months following the closing, at the end of which they were required to surrender it broom clean.

19. That agreement was not a lease, and it says so. Paragraph 11 of it provides that the agreement "is intended to grant a license for Sellers to remain in possession of the premises and is not intended to establish a Landlord and Tenant relationship between the parties." No rent was reserved, charged, demanded or paid. Neither the Debtor nor I received any rent, use and occupancy charge, or other payment from the sellers for their occupancy. The only money the agreement called for was a $4,000.00 deposit made by the sellers at closing and held in escrow by the escrow agent named in the agreement, to secure the sellers' own obligation to surrender the pool house broom clean, together with the sellers' obligation to pay fuel and utilities through the date they delivered possession. That deposit was the sellers' money, not income to the Debtor or to me.

20. The sellers vacated in or about June 2022. Apart from that temporary license, the Property has not been rented to anyone, has never had a tenant, and has never generated any rental income. Since the sellers left, no one has occupied the Property other than me and my family. It is presently under renovation and is not finished.

21. I have paid, from my own resources, the costs of maintaining and insuring the Property.

**VI. The Payments Made in This Case**

22. The Objection states at ¶ 12 that "Debtor has made certain adequate protection payments since the inception of this action, all were made after Lender filed its proof of claim." Both halves of that sentence are inaccurate, and I correct them from my own knowledge.

23. First, the Debtor has made no adequate protection payment. I have made every one of them, personally and through my professional corporation, Jamaica Healthy Medical PC. No payment was made from any account of the Debtor, and the Debtor has never reimbursed me.

24. Second, not every payment followed the filing of the proof of claim. The May 2026 installment of $12,500.00 was sent in two wires of $9,000.00 and $3,500.00 from the TD Bank account of Jamaica Healthy Medical PC and was received by Stormfield on May 11, 2026. Stormfield filed its proof of claim ten days later, on May 21, 2026.

25. The June 2026 installment of $12,500.00 was received on June 11, 2026 under JPMorgan Chase reference number 003675, 260611B01N61. On July 7, 2026 I initiated a further payment of $12,500.00 from my U.S. Bank account ending 8441, Transaction No. S070726164510731, for delivery on July 8, 2026. That payment was not required by any order of this Court; I made it voluntarily.

26. I have continued to pay every month. On September 1, 2026 I made a further payment of $12,500.00 to Stormfield, again from my own funds and those of my professional corporation, and again in two wires:

— $2,500.00 wired on September 1, 2026 from the TD Bank account of Jamaica Healthy Medical PC ending 2012, wire ID 2653457, Fed Reference No. 20260901MMQFMP2H14028809011635FT03, bearing the message to the beneficiary "63 MILL RIVER ROAD"; and

— $10,000.00 wired on September 1, 2026 from my U.S. Bank account ending 8441, Transaction No. 0109261347036132, FedWire No. 20260901J1Q5040C005461, the stated purpose of which was "Loan Repayment."

27. Both September wires were directed to Stormfield Capital Funding I, LLC, 200 Pequot Avenue, Southport, Connecticut, at JPMorgan Chase Bank, N.A., ABA 021000021, account ending 7896 — the same beneficiary and account to which the earlier payments were sent. The TD Bank wire is shown as processed and the U.S. Bank wire as completed. I have furnished the confirmations for both wires to the Debtor's counsel. No order of this Court required the September payment either; I made it for the same reason I made the others.

28. Stormfield has accepted and retained every payment. It has never rejected one, never offered to return one, and never told me, the Debtor, or the Debtor's counsel that it regarded any payment as untimely or insufficient.

## VII. The Records I Am Producing

29. I am assembling and producing to the Debtor's counsel the records bearing on the matters raised in the Objection, including: every payment and contribution made by me, my father, Jamaica Healthy Medical PC or any related entity toward the purchase, the loans, the construction,

Stormfield, JB Lending and the adequate protection payments in this case; the March 2022 closing documents, including the Post Closing Possession Agreement described above; the documents supporting the down payment and closing contributions; communications showing that the Property was purchased and renovated as a family residence; communications with Stormfield or its inspector concerning the contractor's work and any request to withhold construction draws; the construction agreements, invoices, payments and photographs concerning the plumbing damage and the unfinished work; communications concerning attempted refinancing; communications requesting payoff figures and Stormfield's responses; and the documents concerning the Queens property and 131-04 220th Street Corp. It is clear that the broker and the lender in this case set it up as a commercial loan when in fact it was supposed to be a residential one. Since, it was set up as a commercial loan, my family was stripped of several rights and protections including the interest rate charged, the duration of the loan and flexibility attached to the residential loan, including its regulation by TILA, HOEPA and RESPA federal provisions.

30. I am prepared to produce those records to the United States Trustee and to Stormfield on reasonable notice and subject to appropriate confidentiality protections, and to submit to examination under Bankruptcy Rule 2004 or at any hearing the Court directs.

## VIII. Why I Am Submitting This

31. I am not asking the Court to excuse anything. Where the Debtor's papers have been wrong, I have said so, and I said so before Stormfield's objection was answered.

32. What I ask is that the questions in dispute be decided on evidence. My family put its savings into this house and has paid every sum this Court has ordered, from my earnings, without missing a month. We are not asking any creditor to accept less than it is lawfully owed. We are asking for the opportunity to establish what that amount is.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 9, 2026

DR. WILLIAM J. GIBBS, JR.